FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 02, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KATTRA B., <br><br>  Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br>  Defendant. | No.  1:19-CV-03183-RHW <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> **(ECF Nos. 11, 15)** |

Before the Court is Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment.  ECF Nos. 11 & 15.  Plaintiff brings this action seeking judicial review of the Commissioner's denial of her application for disability benefits and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed.  For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT           ~ 1

## I.  JURISDICTION

The Appeals Council denied Plaintiff's request for review on June 14, 2019. Tr. 1-6.  Plaintiff timely filed the present action seeking judicial review on August 9, 2019.  ECF No. 1.  Under 42 U.S.C. § 405(g), Plaintiff's claims are properly before this Court.

## II.  SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4); *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations. 20 C.F.R. § 416.945(a)(1).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. § 404.1520(a). If the claimant cannot engage in

1  her previous occupations, the ALJ proceeds to step five and the burden shifts to the

2  Commissioner to demonstrate that (1) the claimant is capable of performing other

3  work; and (2) such work exists in "significant numbers in the national economy."

4  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue,* 700 F.3d 386, 388-89 (9th Cir.

5  2012).

### III.  STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under Section 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

1    In reviewing a denial of benefits, a district court may not substitute its
2    judgment for that of the ALJ.  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.
3    1992).  If the evidence in the record "is susceptible to more than one rational
4    interpretation, [the court] must uphold the ALJ's findings if they are supported by
5    inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104,
6    1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.
7    2002).  Moreover, a district court "may not reverse an ALJ's decision on account
8    of an error that is harmless."  *Molina*, 674 F.3d at 1111.  An error is harmless
9    "where it is inconsequential to the [ALJ's] ultimate nondisability determination."
10   *Id.* at 1115.  The burden of showing that an error is harmful generally falls upon
11   the party appealing the ALJ's decision.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10
12   (2009).

13                          IV.    STATEMENT OF FACTS

14   The facts of the case are set forth in detail in the transcript of proceedings
15   and only briefly summarized here.  Plaintiff was 46 years old on the alleged
16   disability onset date, May 31, 2014.  She completed her GED and has no college,
17   and she is able to communicate in English.  Tr. 72-73.  Plaintiff also possesses a
18   Commercial Driver's License, or CDL.  Tr. 73.  Plaintiff has past relevant work as
19   a bus driver, or shuttle driver, for the organization People to People.  Tr. 73-74.
20   Plaintiff stopped working in 2014.  Tr. 73.

Plaintiff suffers from obesity, diabetes, depression, anxiety, obstructive sleep apnea, and peripheral neuropathy of the feet. Tr. 19.

## V. THE ALJ'S FINDINGS

At **step one**, the ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2019 and that she has not engaged in substantial gainful activity since the alleged disability onset date. *Id.*

At **step two**, the ALJ found that Plaintiff has the following severe impairments: obesity, diabetes, depression, anxiety, obstructive sleep apnea, and peripheral neuropathy of the feet. *Id.*

At **step three**, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equals the severity of the listed impairments in 20 C.F.R. Section 404, Subpart P, Appendix 1.

At **step four**, the ALJ found that Plaintiff has the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with some exceptions. Plaintiff can stand and walk up to four hours in an eight-hour workday and sit up to six hours in an eight-hour workday. Tr. 22. She would need an option between sitting and standing every 30 minutes while remaining at the workstation. *Id.* She could work in a low stress work environment and would only be able to perform simple and routine tasks. Tr. 23. She cannot be subjected to production pace. *Id.* She can never climb ladders, ropes, or scaffolds, but she could occasionally climb ramps

1  and stairs, occasionally balance and stop, rarely crouch, and never kneel or crawl.

2  *Id.* She is limited to frequent bilateral handling and frequent bilateral fingering.

3  *Id.* And Plaintiff is limited to only occasional interaction with the public and

4  coworkers. *Id.*

5       The ALJ found that Plaintiff is not capable of performing past relevant work

6  as a bus driver or shuttle driver. Tr. 29.

7       At **step five**, the ALJ determined that in light of Plaintiff's age, education,

8  work experience, and RFC, there are a significant number of jobs in the national

9  economy that she can perform. Tr. 30. The ALJ heard from vocational expert Jeff

10 Tittelfitz. Tr. 98. Mr. Tittelfitz testified that given Plaintiff's RFC, she could

11 perform the work of a Marker, identified by the Dictionary of Occupational Titles

12 ("DOT") 209.587-034. Tr. 101. This job is light work, Specific Vocational

13 Preparation (SVP) level 2, and unskilled which allows the worker to sit or stand if

14 they prefer and allows the person to set their own pace. Tr. 101. Next, the

15 vocational expert opined that Plaintiff could perform the work of Small Product

16 Assembler II where the same sitting and standing requirements apply and the

17 worker can set her own pace. Tr. 102.

18      Accordingly, the ALJ concluded that Plaintiff has not been under a disability

19 for the relevant period.

20 / / /

## VI.  ISSUES FOR REVIEW

Plaintiff argues that (1) the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective testimony; (2) the ALJ improperly weighed the medical opinion evidence; (3) the ALJ reversibly erred when discounting lay witness testimony; and (4) the ALJ reversibly erred by not properly analyzing whether significant jobs exists that Plaintiff can perform in the national economy at step five.

## VII.  DISCUSSION

**A. The ALJ did not err by discounting Plaintiff's subjective symptom complaints.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.* Questions of credibility on resolutions of conflict of testimony are to be resolved by the ALJ. *Id.*

The ALJ found that Plaintiff's medically determinable impairments could reasonably cause her alleged symptoms, but rejected her statements concerning intensity, persistence, and limiting effects of these symptoms as inconsistent with the medical and other evidence in the record. Tr. 24.

The ALJ discredited Plaintiff's statement that she used to be an active person and exercised. Tr. 24. The ALJ made this finding by looking to the visit with treating physician Tatiana Antoci, M.D., in April 2014 where Dr. Antoci noted that Plaintiff had only fair dietary compliance and was not exercising. Tr. 24 (citing Tr. 398). Plaintiff argues that the ALJ misconstrued Plaintiff's symptom testimony when he found such testimony was "inconsistent with the claimant's testimony that she was an active person and exercised." ECF No. 11, at 5. This inconsistency finding is supported by substantial evidence where the medical history showed that Plaintiff did not comply with exercise and dietary recommendations as of April 2014, but at the hearing in June 2018 she stated "I have been active my whole life, and the last few years no." Tr. 97, 398. The ALJ also noted other inconsistencies in Plaintiff's symptom testimony.

For instance, the ALJ noted multiple instances in the medical evidence where Plaintiff denied the presence of certain symptoms. *See* Tr. 24-26. In a follow-up with Dr. Antoci in April 2016, Plaintiff denied "infection, paresthesia[], neuropathic pain, and numbness and her exam showed a normal gait and station . .

. .." Tr. 26. In a subsequent January 2018 follow-up with Dr. Antoci, Plaintiff again denied paresthesia, neuropathic pain, and numbness. Tr. 26 (citing Tr. 642). Because the ALJ specifically identified the areas of Plaintiff's symptom testimony that he found to be inconsistent with the medical evidence, this Court rejects Plaintiff's argument that the ALJ misunderstood her testimony. Therefore, the ALJ did not err by discounting Plaintiff's subjective symptom testimony.

**B. The ALJ did not err when weighing the medical opinion evidence.**

This Court rejects Plaintiff's contention that the ALJ improperly weighed the medical opinion evidence.

The ALJ is responsible for resolving conflicting medical opinions regarding a claimant's abilities and limitations. 20 C.F.R. § 404.1527. The ALJ may discount a doctor's opinion when the doctor's clinical notes and observations do not support the doctor's assessed limitations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Ellen Rozenfeld, Psy.D., an impartial medical expert, reviewed Plaintiff's medical records, issued a report, and testified at Plaintiff's hearing. Tr. 27-28. The ALJ accorded great weight to Dr. Rozenfeld's opinion that Plaintiff could perform full-time work with certain limitations. Tr. 28. These limitations included a predictable work setting, occasional interaction with others, no production pace, and simple and routine work. Tr. 28. On cross-examination, Dr. Rozenfeld

testified that the objective evidence did not indicate that Plaintiff's emotional flare-ups would cause her to be incapable of performing work. Tr. 87. Dr. Rozenfeld did, however, opine that Plaintiff would only be capable of simple, routine tasks. This limitation differed from the medical opinion of psychological examiner Alexander Patterson, Pys.D., who performed an in-person consultative exam. Tr. 86-87.

In August 2016, Dr. Patterson observed Plaintiff to have an apathetic and detached presentation with significant psychomotor retardation and slowed speech, with difficulty on memory testing. Tr. 634-38. Dr. Patterson concluded that Plaintiff would not have difficulty performing: simple and repetitive tasks, detailed and complex tasks, accepting instructions from supervisors, interacting with coworkers or the public, performing work activities on a consistent basis without special or additional instruction, or maintaining attendance at work. Tr. 638. However, he opined that she would have difficulty completing a normal workday without interruptions from a psychiatric condition due to chronic severe depression. *Id.* He also opined that she would have difficulty dealing with the usual stress encountered in the workplace. *Id.*

In July 2016, William Drenguis, M.D. performed an in-person physical exam of Plaintiff. Tr. 626-31. Dr. Drenguis opined that Plaintiff's maximum standing or walking capacity with normal breaks is at least two hours in an eight-

hour workday. Tr. 631. She is limited by her chronic lumbar sprain, peripheral neuropathy in her feet, and degenerative joint disease ("DJD") of her knees. Tr. 631–32. Next, Dr. Drenguis found her maximum sitting capacity was six hours in a normal eight-hour workday. Tr. 632. With respect to her postural activities, Plaintiff "may occasionally climb steps and stairs, ladders, scaffolds, and ropes and occasionally stoop, kneel, crouch, and crawl. She is limited by her chronic lumbar sprain and bilateral DJD of the knees." *Id.* And her manipulative activities, Plaintiff "may frequently reach overhead, reach forward, handle, finger, and feel." Tr. 632.

Dr. Drenguis also noted:

> The claimant can make a full fist with either hand to touch her thumb to the tip of each finger. She was able to tie a pair of shoes, manipulate a button, pick up a coin, and [] turn a doorknob with either hand. Grip is 5/5 and bilaterally symmetrical.

Tr. 629.

The ALJ assigned partial weight to Dr. Drenguis's opinion. Tr. 29. The ALJ determined that "Dr. Drenguis' light exertional limitation is consistent with the record[,] but his standing limitation, postural limitations, and manipulative limitations are not consistent with the objective record or his own internal findings (i.e. no upper extremity neuropathy to support manipulative limitations and no x-rays to support degenerative joint disease of the knees)." *Id.*

Next, the ALJ assigned partial weight to the opinion of Robert Bernardez-Fu, M.D. who opined that Plaintiff is capable of light exertional work. Tr. 29. The ALJ found that Dr. Bernardez-Fu's opinion was mostly consistent with the objective medical evidence, but evidence received after his evaluation showed even greater limitation to Plaintiff's activities, i.e. bilateral neuropathy of the feet. Tr. 29.

Plaintiff argues that Dr. Drenguis's opinion limited Plaintiff to only sedentary work, and the ALJ committed harmful error in only giving Dr. Drenguis's opinion partial weight. ECF No. 11, at 11-12. The ALJ's weighing of Dr. Drenguis's opinion and the other medical opinion evidence is supported by substantial evidence. The ALJ did not conclude that Plaintiff could perform the full range of light work. Tr. 30. Instead, the ALJ acknowledged that Plaintiff's RFC gave limitations and specifically asked the vocational expert if Plaintiff could perform certain jobs in the national economy based on such limitations. *Id.* The vocational expert concluded she could perform the jobs of Marker, Small Products Assembler II, or Electronics Worker. Tr. 30-31. In the case of Dr. Bernardez-Fu, the ALJ actually found that later received evidence demonstrated a greater level of limitation on Plaintiff. Tr. 29. Contrary to Plaintiff's argument, the ALJ properly considered Dr. Drenguis's opinion and weighed it with the other medical opinion evidence to derive Plaintiff's RFC. The ALJ did not improperly weigh the medical

opinion evidence and the ALJ's rationale for the RFC determination was properly explained.

**C. The ALJ did not err by assigning little weight to the laywitness statements.**

An ALJ must "take into account" lay witness statements, or else provide "arguably germane reasons" for disregarding them. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). "One reason an ALJ may discount lay testimony is that it conflicts with medical evidence." *Id.*

The ALJ considered and assigned little weight to the statements of Plaintiff's wife and friends. Tr. 29. He found that these statements largely mirrored Plaintiff's subjective symptom reports which were not fully consistent with the objective medical evidence. *Id.* This was not error. As noted above, the ALJ granted great weight to Dr. Rozenfeld's opinion and testimony, who opined that Plaintiff could sustain full-time work with assigned limitations. *See* Tr. 28. The laywitness statements of Plaintiff's wife and friends were not consistent with the overall medical opinion evidence and Mr. Tittelfitz's (vocational expert) opinions on Plaintiff's ability to adjust to alternative work. The ALJ's determination to discount such laywitness accounts when making its disability determination is supported by substantial evidence.

/ / /

**D. The ALJ properly identified jobs which Plaintiff could perform at Step Five.**

A vocational expert's "recognized expertise provides the necessary foundation for his or her testimony." *Bayliss*, 427 F.3d at 1217-18; *see also* 20 C.F.R. § 404.1566(e). An "ALJ may rely on a [vocational expert]'s testimony concerning the number of relevant jobs in the national economy, and need not inquire *sua sponte* into the foundation for the expert's opinion." *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2018). In an attachment to her motion for summary judgment, Plaintiff attempts to refute the vocational expert's job classifications and numbers of existing jobs, and cites an alternative source for these figures. ECF No. 11 at 18-19. This evidence was not presented to the ALJ and this Court will not consider it here. *Shaibi*, 883 F.3d at 1109 ("[W]hen a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel."). Plaintiff has not demonstrated that the ALJ's reliance on the vocational expert at step five was not unsupported by substantial evidence.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

3. Judgment shall be entered in favor of **Defendant** and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and forward copies to counsel and **CLOSE** the file.

**DATED** this 2nd day of April, 2021.

<i>s/Robert H. Whaley</i><br>
ROBERT H. WHALEY<br>
Senior United States District Judge